```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                         EASTERN DIVISION

UNITED STATES OF AMERICA,       )
                                )
              Plaintiff,        )
                                )
         v.                     )   No. 4:12CR243 JAR
                                )              (FRB)
MICHAEL GLOVER,                 )
A/K/A BORN TALEEM BEY,          )
                                )
              Defendant.        )
```

**MEMORANDUM,
REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

On January 7, 2013, the defendant was granted leave to file, out of time, a Motion To Suppress Evidence. On that same date the defendant's Motion To Suppress Evidence was referred to the undersigned United States Magistrate Judge. (See Docket No. 122). The motion was heard before the undersigned on January 15, 2013. At the close of the hearing counsel for the defendant was granted additional time in which to file a reply to the government's response to his Motion To Suppress Evidence. The reply was filed on January 22, 2013. On January 15, 2013, the undersigned ordered that a transcript of the motion hearing be prepared and filed with the court, to assist the undersigned in making accurate findings of fact. The transcript was filed with the court on February 5, 2013. (See Docket No. 132). The undersigned has reviewed the transcript as well as the digital electronic record of the hearing in making the following findings of fact.

## Findings Of Fact

On May 22, 2012, the St. Louis Metropolitan Police Department received an anonymous telephone call during which the caller, a female, reported that a person known as Michael Glover with a date of birth of December 31, 1971, was wanted on several outstanding felony arrest warrants, and that Glover was at that time inside a residence at 5347 Enright in the City of St. Louis. An officer then ran a computer check to verify, and did verify that there were outstanding arrest warrants for Michael Glover for the offenses of Assault On A Law Enforcement Officer First Degree, Resisting Arrest, Unlawful Use Of A Weapon and for Probation Violation. Several officers then went to the residence on Enright. The residence is located in a locked and gated community of four residences.

In the meanwhile, one of the officers recontacted the female who made the original call and obtained additional information. She provided an access code that they used to enter the locked gates outside the residence. She also reported that Glover was observing the officers from an upstairs window in the residence. She reported that Glover was making plans to buy an airplane ticket in an effort to escape the area. The officers knocked on the door and called to Glover but received no response.

Officers of the Violent Offender Unit were called to the scene, including Officer Marc Wassam. Officers of that Unit had been attempting to locate Glover for a period of time. The officers took up surveillance of the residence. Officer Wassam saw

a Monte Carlo vehicle arrive at and enter the gated complex. The Monte Carlo then parked behind an Escalade vehicle parked next to the residence at 5347 Enright. It was reported to Officer Wassam that the Escalade was registered to Michael Glover. Officer Wassam saw that a tire on the Escalade was flat. After a period of time a pickup truck appeared at the gate. The driver of the Monte Carlo then drove to the gate and admitted the truck. The occupants of the truck then proceeded to repair the flat tire on the Escalade. The pickup truck and its occupants then left the area. The driver of the Monte Carlo then walked out onto Enright Street and began looking up and down the street while talking on a cellular telephone. He then returned to and entered the Monte Carlo and sat in the vehicle with the motor running.

Officer Wassam then approached the Monte Carlo and asked the driver to exit the vehicle. Officer Wassam then checked the perimeter of the residence to make sure that all of the exits were covered by officers. Officers Wassam and Custer then approached the front door of the residence. There is a sidewalk running in front of the house. A walkway leads from the sidewalk to a set of steps leading to a porch area that runs across the front of the house. The front door is located on the porch level. (See Defendant's Motion Hearing Exhibits 1-2, Photographs). Officer Custer knocked on the front door and identified the officers as police. He called to Glover by name and told him to surrender himself. There was no response. The officers continued to knock and call to Glover for five to ten minutes, with no response.

Officer Wassam then heard movement inside the house near the entryway. He then walked to a nearby window located several feet to the side of the doorway. The window and the door were each accessible from the front porch area that ran across the front of the house. (See Defendant's Motion Hearing Exhibits 1 and 2 - Photographs). The window had dark tinted glass however Officer Wassam was able to see inside the residence as he pressed his face against the window. As he looked in the window he saw a person who he recognized as Michael Glover based on a photograph of Glover that he had seen earlier that day. Glover was standing in the entryway behind the front door to the residence and appeared to be holding a pistol in his hand. Glover looked toward Officer Wassam and then turned and fled into a nearby room. The officers then broke open the front door and entered the residence. Inside the residence the officers were confronted by a pit bull dog. Eventually the dog retreated. The officers again announced themselves as police and called Glover to surrender. They repeated this several times with no response. Officer Wassam then opened the door to the room to which he believed Glover had retreated. He then saw Glover in the room. Glover started walking toward a walk-in closet in the room, but stopped and surrendered. Officer Wassam placed handcuffs on Glover. Officer Wassam then conducted a protective sweep of the room to see if anyone else was present. He looked into the walk-in closet. On shelves in the closet he saw two assault rifles.

Officer Wassam then spoke with Glover who insisted that his name was Born Taleem Bey.  Officer Wassam then asked Glover for identification documents.  Glover said that he had identification in his wallet which was located in a drawer in the room.  Glover told Officer Wassam to retrieve the wallet, which he did.  Inside the wallet was identification bearing the name Born Taleem Bey and also a visa card bearing the name Michael Glover.  Officer Wassam then placed Glover under arrest on the outstanding warrants.

Following the arrest of Glover the officers left the residence and secured the premises.  Officer Wassam then applied for a warrant to search the residence at 5347 Enright for "firearms, ammunition, firearms documentation, documentation of residency and indicia of control over the premises."  The application was accompanied by an affidavit by Officer Wassam.  In the affidavit he summarized the occurrences set out above, including describing the firearms he had seen in the residence.  The affidavit also noted that Glover's wife arrived at the scene and reported that she and Glover had resided at 5347 Enright for the past year.[1]  The affidavit also noted that Glover was a convicted felon.  Based on the information set out in the application and affidavit Magistrate Judge Mary Ann L. Medler found probable cause to believe that the described items could be found on the property and issued a warrant to search the residence.  (See

---

[1] From testimony adduced at the hearing it appears that the woman who appeared at the scene and identified herself as Glover's wife is the same person who made the initial 911 telephone call to the police and with whom the officers spoke thereafter by telephone.

Government's Motion Hearing Exhibit 1 - Application, Affidavit and Search Warrant). The warrant was then executed and the officers seized firearms, currency, a money counter, several kilograms of heroin, photos and drug paraphernalia.

<u>Discussion</u>

As grounds to suppress the evidence seized by the officers in this case the defendant argues that the officers invaded the "curtilage" of the home. He contends that the officers "violated the Defendant's Fourth Amendment rights when a detective pressed his face up against the living room window of the Defendant's home because the windows were tinted and he could not see inside." He further avers that "the windows were tinted specifically to prevent persons outside from seeing in the home." (Defendant's Motion To Suppress Evidence, Docket No. 121, at P.3).

The Fourth Amendment guarantees the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures. <u>United States Constitution, Amend. IV</u>. The "capacity to claim the protection of the Fourth Amendment depends . . . upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." <u>Rakas v. Illinois</u>, 439 U.S. 128, 143 (1978). Fourth Amendment protection most certainly and fundamentally extends to a person's home. <u>Silverman v. United States</u>, 365 U.S. 505, 511 (1961). The Fourth Amendment protection extends beyond the threshold of the residence and protects, as well, areas surrounding the home in which is carried on the

"intimate activity associated with the 'sanctity of a man's home and the privacies of life.'" Oliver v. United States, 466 U.S. 170, 180 (1984)(quoting Boyd v. United States, 116 U.S. 616, 630 (1886)). This area surrounding the home is referred to as the "curtilage".

Law enforcement officers may encroach upon the curtilage of a home for the purpose of contacting the occupants. United States v. Hammett, 236 F.3d 1054, 1059 (9th Cir.), cert. denied, 534 U.S. 866 (2001); United States v. Raines, 243 F.3d 419, 421 (8th Cir. 2001), United States v. Reed, 733 F.2d 492, 501 (8th Cir. 1984). ("[N]o Fourth Amendment search occurs when police officers who enter private property restrict their movements to those areas generally made accessible to visitors such as driveways, walkways or similar passageways.")

In United States v. Dunn, 480 U.S. 294, (1987), the Supreme Court set out a number of factors to be considered in determining whether an area in question is within the curtilage of the home, including the proximity of the area to the home; whether the area is included within an enclosure surrounding the home; the nature of the uses to which the area is put; and the steps taken by the resident to protect the area from observation by people passing by. Id. 301. See also United States v. Boyster, 436 F.3d 986, 991 (8th Cir. 2006). These factors are not to be applied mechanically but are to be used in determining the extent to which the area is associated with the home in determining whether it should be afforded the same Fourth Amendment protection. Dunn, supra. "Every

curtilage determination grows out of its own set of facts." Boyster, supra.

The defendant's "curtilage" argument essentially focuses on the fourth Dunn factor, namely, the steps taken by the resident to protect the area from observation by people passing by. He claims in his motion that the home's windows "were tinted specifically to prevent persons outside from seeing in the home." However, no evidence was offered at the hearing as to the intent of the occupants in installing tinted windows at the residence. Absent such evidence one could just as easily infer that the tinted windows were installed to block the sun's rays. More likely, they were intended to do both. Numerous cases have held that no Fourth Amendment violation occurs when officers look into the window or door of a house in pursuit of some legitimate law enforcement objective even though they might be within curtilage of the property. See e.g. United States v. Hersch, 464 F.2d 228, 229-30 (9th Cir.), cert. denied, 409 U.S. 1008 (1972) (Officers standing on front porch looked through window partially covered by drape); Nordskog v. Wainwright, 546 F.2d 69, 71-72 (5th Cir. 1977) (Officers peered into bedroom window and back door of residence); United States v. Anderson, 552 F.2d 1296, 1298-99 (8th Cir. 1977) (Officers looked into basement window partially covered by a shade); United States v. Daoust, 916 F.2d 757, 758 (1st Cir. 1990) (Officers looked into kitchen window at rear of house); United States v. Khabeer, 410 F.3d 477, 481-82 (8th Cir. 2005) (Officer looked into front window of home while standing on driveway).

The defendant argues that the looking into the window in this case was particularly intrusive because Officer Wassam could not see into the residence until he pressed his face against the window in order to see inside. (See defendant's Reply To The Government's Response To Defendant's Motion To Suppress Evidence, Docket No. 130, at P.2. Similar circumstances were presented in United States v. Garcia, 997 F.2d 1273 (9th Cir. 1993). In Garcia officers went to an apartment to investigate a report that narcotics were being sold at the apartment. They went to the back of the apartment, walked onto the back porch area and approached the back door. There was a dark metallic screen door in the doorway. In order to look inside the apartment it was necessary for the officers to shade their eyes and press their faces against the screen door. Id. at 1276. They spoke to persons inside the residence through the door. As they did so they continued to do "their best to see through the darkened screen door." Id. at 1277. The officers saw incriminating evidence inside the apartment. The court held that "By standing on the back porch of (the apartment) and looking through the mesh screen door, the officers did not make an unlawful entry or conduct an unlawful search in violation of the Fourth Amendment." Likewise, the undersigned concludes that there was no Fourth Amendment violation when Officer Wassam pressed his face against the tinted window and looked into the residence here.

The defendant also contends that the initial entry into the home to arrest the defendant was unlawful. The government advances alternative arguments in support of its assertion that the entry of the home was lawful, namely that there existed warrants

for the arrest of the defendant and secondly, that exigent circumstances justified the entry.

In Payton v. New York, 445 U.S. 573 (1979) the Supreme Court held that "For Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." Id. at 603. The Payton holding requires that "officers executing an arrest warrant must have a reasonable belief that the suspect resides at the place to be entered . . . and have reason to believe that the suspect is present at the time the warrant is executed." United States v. Risse, 83 F.3d 212, 216 (8th Cir. 1996) (emphasis in original) (internal quotes omitted). This "reasonable belief" standard is less than a probable cause requirement; United States v. Gay, 240 F.3d 1222, 1226 (10th Cir. 2001); and less than the "reasonable suspicion" required for an investigative stop under Terry v. Ohio, 392 U.S. 1 (1968). United States v. Clayton, 210 F.3d 841, 844 n.3 (8th Cir. 2000).

Applying these standards the undersigned concludes that the officers lawfully entered the residence to apprehend the defendant on the outstanding warrants. The officers could reasonably believe that Glover resided at the residence based on the information provided by the woman making the 911 call. Initially the woman stated that Glover was at the residence and that there were warrants outstanding for his arrest. The officers then recontacted the woman and she provided additional information including the key pad number which could be used to open the gated

entrance; that Glover was inside the residence watching them; and that he was attempting to purchase an airline ticket and making plans to flee. When the officers arrived at the scene they saw a car registered to Glover parked in the driveway next to the residence. All of this could lead the officers to reasonably believe that Glover resided at the Enright address and was presently in the residence. United States v. Gay, supra 240 F.3d at 1226-1228; United States v. Clayton, supra, 210 F.3d at 844. The fact that Officer Wassam saw and recognized Glover when he looked in the window solidified their reasonable belief that Glover was in the residence. United States v. Clifford, 664 F.2d 1090, 1093 n.7 (8th Cir. 1981). The officers therefore lawfully broke open the door to enter and arrest Glover. United States v. Shurn, 852 F.2d 366, 367 (8th Cir. 1988).

The government argues further that the entry into the home was justified by exigent circumstances. Officers may enter a residence without a warrant if there exists a threat to the safety of the officers or the general public. Warden v. Hayden, 387 U.S. 294, 298-99 (1967). In determining whether a warrantless entry was justified by such exigencies the court must consider the circumstances that confronted the officers at the time of the entry. United States v. Leveringston, 397 F.3d 1112, 1116 (8th Cir. 2005). Here the officers were present at the residence to locate and arrest a suspect for whom warrants for arrest had been issued. The warrants were for violent offenses including assault on a law enforcement official and resisting arrest, and for a weapons charge. Further they had received information that the

wanted suspect was inside the residence and was preparing to flee. Further, they had seen someone fixing a flat tire on a car registered to the wanted suspect, bolstering the thought that he might be preparing to flee. The officers knocked on the door and repeatedly identified themselves and called for Glover to surrender himself. They received no response to these repeated requests. When Officer Wassam looked into the residence he saw Glover holding what appeared to be a pistol in his hand. When Glover saw Officer Wassam looking at him through the window he turned and ran to another area of the residence. All of these things provided the officers with an objectively reasonable belief that there was an immediate need to enter the residence to protect themselves from harm. United States v. Martin, 613 F.3d 1295, 1303-04 (10th Cir. 2010); United States v. Newman, 472 F.3d 233, 237-38 (5th Cir. 2006).

Following the arrest of the defendant inside the residence the officers conducted a brief protective sweep of the area to determine if anyone else was present. During this sweep in a walk-in closet in the room where the defendant was arrested the officer saw two assault rifles on a shelf. The protective sweep and discovery of the rifles in plain view were lawful. Maryland v. Buie, 494 U.S. 325 (1990).

The defendant moves to suppress the evidence seized pursuant to the search warrant obtained by Officer Wassam following the defendant's arrest. His sole claim is that the search warrant was not valid because it was issued based on observations made by Officer Wassam during an initial illegal entry into the premises.

As discussed above, Officer Wassam's initial entry into the premises was lawful, as was his protective sweep of the closet area during which he saw firearms in plain view.  The inclusion of this information in the application and affidavit in support of the application for the search warrant does not serve to invalidate the warrant.  <u>United States v. Cisneros-Gutierrez</u>, 598 F.3d 997, 1007 (8th Cir.), <u>cert. denied</u>, ___ U.S. ___, 131 S.Ct. 681 (2010).

<u>Conclusion</u>

For all of the foregoing reasons the defendant's motion should be denied.

Accordingly,

**IT IS HEREBY RECOMMENDED** that defendant Michael Glover's Motion To Suppress Evidence (Docket No. 121) be denied.

The parties are advised that any written objections to these findings and determinations shall be filed not later than **Thursday, February 21, 2013.**  Failure to timely file objections may result in waiver of the right to appeal questions of fact.  Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).

/s/ Frederick R. Buckles<br>
_____<br>
UNITED STATES MAGISTRATE JUDGE

Dated this 14th day of February, 2013.